UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                       Case No. 17-CR-178

HARSHINDER P. BHATIA,
A/K/A "SHINDA BHATIA,"

    Defendant.

---

## PLEA AGREEMENT

---

    1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Erica J. Lounsberry, Assistant United States Attorney, and the defendant, Harshinder P. Bhatia, a/k/a "Shinda Bhatia," individually and by attorney Alex Flynn, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

    2.    The defendant has been charged in a three-count indictment, which alleges violations of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (B)(i); Title 18, United States Code, Sections 1589(a) and (d); and Title 18, United States Code, Section 1592(a).

    3.    The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to plead guilty to the following count, set forth in full as follows:

## COUNT ONE

**THE GRAND JURY CHARGES:**

Beginning on or about September 6, 2009, and continuing through April 6, 2011, in the State and Eastern District of Wisconsin,

**HARSHINDER BHATIA, a/k/a "SHINDA BHATIA,"**

knowing and in reckless disregard of the fact that an alien, namely L.K., an Indian national, had remained in the United States in violation of law and did knowingly conceal, harbor, and shield from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (B)(i).

5.      The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. The facts in Attachment A are provided for the purpose of setting forth a factual basis for the plea of guilty. They are not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum term of imprisonment of ten years, up to a $250,000 fine, a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution may be ordered by the Court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 29 of this agreement.

2

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss Counts Two and Three of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Harboring an Alien for Financial Gain as set forth in Count One of the indictment, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the alien identified in the indictment entered or remained in the United States in violation of the law;
>
> Second, the defendant knowingly concealed, harbored, or shield from detection the named alien within the United States;
>
> Third, the defendant either knew or acted in reckless disregard of the fact that named alien entered or remained in United States in violation of the law; and
>
> Fourth, the defendant committed such offense for the purpose of commercial advantage or private financial gain.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the Court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the Court will be pursuant to the Sentencing Reform Act, and that the Court will give due regard to the Sentencing Guidelines when sentencing the defendant.

3

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing Court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the Court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the Sentencing Judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the Sentencing Court that the applicable base offense level for the offense charged in Count One is 12 under Sentencing Guidelines Manual § 2L1.1(a)(3).

### Specific Offense Characteristics

17. The parties acknowledge and understand that the government will recommend to the Sentencing Court that the following increases apply to the offense charged in Count One: a **4-level increase** for serious bodily injury under Sentencing Guidelines Manual § 2L1.1(b)(7)(B), and a **2-level increase** for the alien identified in the indictment being involuntarily detained under Sentencing Guidelines Manual § 2L1.1(8)(A). The parties acknowledge and understand that the defendant will object to these recommendations.

### Vulnerable Victim

18. The parties acknowledge and understand that the government will recommend to the Sentencing Court that a **2-level increase** under Sentencing Guidelines Manual § 3A1.1(b)(1)) is applicable to the offense level for the offense charged in Count One because it involved a vulnerable victim. The parties acknowledge and understand that the defendant will object to this recommendation.

### Acceptance of Responsibility

19. The government agrees to recommend a **two-level decrease** for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional **one-**

**level decrease** as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the District Court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. The parties recommend that the defendant should remain on bond pending the sentencing in this matter. Also, the parties recommend that the defendant be allowed to self-report upon receiving a sentence, if necessary.

22. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the length of supervised release and the terms and conditions of the release; and any other matters not specifically addressed by this agreement.

23. Both parties reserve the right to recommend any sentence below or above the applicable sentencing guideline range, as determined by the Court.

### Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the Sentencing Court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the Sentencing Court. The Sentencing Court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the Sentencing Court

6

Case 2:17-cr-00178-JPS   Filed 07/18/18   Page 6 of 15   Document 17

will be guided by the Sentencing Guidelines but will not be bound by the Sentencing Guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the Court.

## **FINANCIAL MATTERS**

26. The defendant acknowledges and understands that any and all financial obligations imposed by the Sentencing Court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the Sentencing Court shall be the minimum the defendant is expected to pay and that the government's collection of any and all Court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the Court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

7

## Restitution

29.     The parties agree to advise the Sentencing Court that as of October 7, 2018 or one week before the sentencing date, whichever is sooner, the defendant has paid restitution in the amount of $25,000 to the victim, L.K. The parties further agree that once this amount is paid, the government will deem it to satisfy the defendant's criminal restitution obligation toward the victim with respect to the charge to which he is pleading guilty.

## Forfeiture

30.     The United States agrees not to pursue forfeiture of the real properties or substitute assets listed in the Notice of Forfeiture attached to the indictment in this case. The United States further agrees to file a Motion to Dismiss Property from Forfeiture Notice of the Indictment reflecting this agreement at or before the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

31.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a Court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The Court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

8

c.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d.   At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e.   At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the Court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

9

Case 2:17-cr-00178-JPS   Filed 07/18/18   Page 9 of 15   Document 17

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

35. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38. The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

39. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

40. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

### VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor

11

Case 2:17-cr-00178-JPS  Filed 07/18/18  Page 11 of 15  Document 17

agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/11/18

HARSHINDER P. BHATIA, a/k/a "SHINDA BHATIA"
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/11/18

ALEX FLYNN
Attorney for Defendant

For the United States of America:

Date: 7/18/18

MATTHEW D. KRUEGER
United States Attorney

Date: 7/18/18

ERICA J. LOUNSBERRY
Assistant United States Attorney

13

# ATTACHMENT A

### Statement of Facts

1. L.K. first traveled to the United States with her family in 2007 for a wedding in New York. The family stayed in New York for five to six months before returning to India.

2. Once back in India, L.K.'s father began looking for a way to move to the family to the United States permanently. During this time, he met Yashpal Chand, one of the defendant's brothers, in India. Yashpal told L.K.'s father that if he was willing to work in one of the defendant's gas stations, he could arrange it.

3. On March 6, 2009, L.K., L.K.'s father, and L.K's younger brother flew to Chicago on tourist visas. At the time, L.K. was a few days away from turning eighteen years old. L.K. and her family were limited by their I-94 forms to remain in the U.S. only until September 5, 2009.

4. The defendant picked up L.K. and her father and brother at the airport and brought them to a duplex located at 6423/25 W. Villard Avenue in Milwaukee. L.K. resided at this duplex until April 2011.

5. L.K. and her father began working for the defendant, each at a different gas station, shortly after their arrival in the U.S. The defendant did not have either of them complete any employment-related legal paperwork, and he was aware that they had no authorization to work in the United States.

6. The defendant employed other undocumented Indian workers. These employees were paid in cash rather than by check. The undocumented employees, including L.K., were not listed in the defendant's quarterly wage reports to the Wisconsin Department of Workforce Development Division of Unemployment Insurance. The defendant did not withhold taxes from their pay, nor did he pay them overtime wages, despite requiring them to regularly work overtime hours.

7. L.K. and her father often worked eight to twelve hours per day, seven days per week, without any breaks. L.K.'s brother, who was fifteen years old, did odd jobs around the gas station and attended school.

8. After several months, the defendant reminded L.K.'s father that his visa was going to expire soon and that he would need to return to India. L.K.'s father left L.K. and her brother in the United States with the defendant so that L.K.'s brother could continue going to school and L.K. could work.

9. For approximately two years, L.K. worked for the defendant twelve hours per day (typically 10 a.m. to 10 p.m.), seven days per week. L.K. and her brother had no choice but to live in the housing the defendant provided because they had no money or wherewithal to go elsewhere.

10. Sometimes the defendant failed to pay the electric bill on the duplex, and L.K. and her brother would not have power or light for a day or two.